On behalf of the appellant, Randy Kinder Excavating, and if it pleases the court, this is my first time before this bench, and I appreciate the hospitality, and especially, actually, the clerk's office that has been the most hospitable of any I've ever been before. Your Honor, we're here today seeking a reversal of the trial court's decision, as is typically the case with an appellant. And while I have argued multiple things in my brief, I don't ever get to everything in my brief, so I want to address, most importantly, two things. First, that simply put, the judge misapplied, well, I'm not exactly sure what law the judge did apply, but to the extent that the judge applied law, he misapplied it in finding that Kinder had violated or committed the first material breach of the subcontract. Second point I wish to talk about is the fact that the first material breach of the subcontract actually occurred through the conduct of the appellee. Let me ask you a question about that, if I may. This actually originated as an action by you, did it not? It did, Your Honor. So that claim, apparently, was rejected by the district court. I believe wrongfully so, Your Honor. And there's no cross appeal, is that right? No, they have not crossed appeal. So what is the effect of the first breach notion that you advance in your brief? Does that mean that you could have terminated the contract at that point, but didn't? I mean, I don't understand what the first in time does for you. You see what I mean? I do, Your Honor, and I would intend to the court that the first material breach would, that the fact that J.A. Manning committed the first material breach of the contract would render their recovery against Randy Kinder for any future material breaches of the contract immaterial. Essentially- Well, but that seems to me a kind of a cross appeal. I mean, if you could have at that point, you didn't terminate the contract at that point, right? We didn't terminate the contract at that point, and in fact, Your Honor- So isn't that a waiver? No, Your Honor. And in fact, the reason I don't believe that that's a waiver is because at the point at which in February of 2011, then in July and August of 2011, when the contract, the subcontract was being materially breached by J.A. Manning, Randy Kinder didn't actually have knowledge at that time of those breaches. They didn't really have knowledge of those breaches until after this claim had more fully developed in the late fall of 2011 when they started getting notice from, I guess, second tier to them, subcontractors and suppliers, that they were not being paid and then resulting Miller Act claims. Well, the district court rejected those, that proposition. They did not grant us relief on that proposition. That's correct, Your Honor. In fact, did not address it at all in their findings. Well, I said it addressed some of your claimed breaches. It did, but I don't believe- Maybe not that particular one. That's correct, Your Honor. But there's nothing in the district court's opinion or maybe I missed it in any of the briefs about what the Missouri law is on material breach and why this is one. There's no guidance there about Missouri's contract law and there are lots of breaches that are not material. Yes, Your Honor, and of course, we would tender that, and no, I'm not familiar with the case on point, but we would tender to the court that the breach of the subcontract by not paying lower tier subs, which resulted in actual, you know, Miller Act, federal Miller Act claims being made against the prime contractor and the bonding company have got to be material. There's a reason why the subcontract set that specific- I can see that might be, but there's no legal principle here that's been pointed to. None by the court either. The court's opinion- I know, but it's your case. I understand, but that is one of the deficiencies that we are raising before this court is the court simply determined, to be frank, determined the ruling that it wished to set forth and didn't cite any law to support it. It didn't cite any cases at all. No, it didn't, and on some of these, for example, you know, as we've pointed out- Well, I mean, that may be true, but if the appellee can fill in the blanks, then the judgment might be affirmed. I agree, Your Honor. Yeah, so was it- But I don't believe that that has been done. Well, I guess that's the question. Were these breaches that Judge Moody identified anticipatory breaches under Missouri law, or- Exactly, Your Honor, and you know, we've argued the anticipatory impedation of the contract. However, he didn't use those terms. No, he didn't, but if that's in substance what he was saying- Right, I mean, it looks like and sounds like it does. Yeah, so what's wrong with that conclusion? I don't believe that under Missouri law this was- You know, I think Missouri law requires a very specific designation of an intent not to perform the contract. That was never done here. The, if I'm not mistaken, the intentional- Now, you're talking now about Kender's alleged breaches. Yes, Your Honor, I got sidetracked and went with this. I'm just switching, I'm sorry. Okay, I'm sorry. It's all right, Your Honor, I'm a little slower. No, that's all right. I can't keep everyone. I want to make sure I'm- Yeah, I was talking about Kender's alleged breaches. Yeah, okay, thank you. But, for example, the- If you're not finished with Judge Arnold's question, you may continue on that. That's all right, I'm on the same page. Okay, then I'll continue, Your Honor. The, what amounts to an anticipatory repudiation must be what the court was referring to when it said a failure to provide adequate assurances. However, Your Honor, those are actually two different concepts. You're not entitled to an adequate assurance under Missouri law. You're entitled to not have the contract anticipatorily repudiated. Anticipatory repudiation requires a positive intention or manifestation of an intended failure or intended design not to perform. Here, the court has actually, would have, if arguing anticipatory repudiation, added an additional requirement that not only can you not manifest an intention not to perform, that you have to continually manifest an intention to perform.  You have that obligation. What does that do for you if I'm in a contractual relationship and somebody anticipatorily breaks? I don't like using the word breach as a verb, but commits an anticipatory breach. Does that, if you continue to perform, doesn't that waive the breach? I would argue that in most situations, yes, it does. So it isn't just, it's not a kind of an option that you have in your pocket. You can keep going and then if things don't work out too well, you can say, okay, you already breached the contract, so it's over. I mean, do you know what I'm saying? I do, Your Honor. If you proceed in the face of an anticipatory breach, what's the law on that? I believe that the law on that on point, Your Honor, is that if you believe that there is an anticipatory breach and you're allowed to remove yourself from performance of the contract, but that performing still would obligate you to perform the contract as designed and would be a waiver, at least at some point, of continued future performance of that breach. Got any cases on that? Don't, Your Honor. I don't, Your Honor. Thank you. Your Honor, I'd also point out that the judge found that the threat of delay-related damages was a breach of contract. I have no case on that either, because I have no case to support it or reject it. Essentially, the judge seemed to feel that it was unfair, but I'd argue that that doesn't make it a breach of contract. And also that the alternative would be that if at the time, Kinder believed that the contract was being delayed, although I concede that by the point we were at trial, the delay was different than Kinder understood at the time once it had been subject to expert analysis. But if they believed that at the time, failing to give those warnings in a liquidated damages scenario is what lying as a snake in the grass trying to, it would have been worse to not warn them. And so the threat of them, well intended at the time. So let's assume that those were not breaches, okay? Really, the nub of the case then becomes, and maybe it is the nub of the case, the end point, that is, the termination. Yes, Your Honor. So, why was that a breach? Well, I don't believe that the termination of J.A. Manning was a breach of the contract. I believe that they had failed to perform the terms of the contract itself. And I understand that the argument is that essentially it's found by the court that the Corps of Engineers was being unfair in their interpretation of the specification as applied to Manning. However, Manning stood in the shoes of having to perform to the satisfaction of the court. That's the same standard that Kinder had to perform to, and in fact, under the federal acquisition regulations. Let me ask you, was this the federal aspect of the case that appeared in your brief? Having to do with contracts, appeals, and those kinds of things. Was that argument advanced to the district court? I'm trying to remember, Your Honor, but I believe that certainly we argued it. I don't recall my post-trial briefing, but I believe so, Your Honor. Okay, thank you. But essentially, Kinder had, its subcontractor was unwilling or unable to perform. Kinder had to perform the contract regardless of whether the specification was impeding that and then had a right to seek a claim for equitable adjustment following that. That's the terms of dealing with the government. That's the terms that were passed down to the subcontract. The fact that J.A. Manning was unable to perform for whatever reason, be it their own lack of capacity or the government's treating them unfairly. They still had that obligation to perform and seek relief with a claim or a pass-through claim following completion of the work. That was made clear to them in written notifications. If you have a pass-through claim, we'll send it on, but you've got to complete the work. They were not being any more impaired by the specification by the Corps of Engineers than Kinder was. Kinder had to either get the job done somehow or be terminated by the Corps of Engineers. So they rightfully terminated a contractor that could not satisfy the owner and comply with the terms of that contract. But I think the state of the court found, as a matter of fact, that the contract couldn't be completed by its literal terms. I believe that the court did find that. So whether that's a legal excuse is one thing. The other thing is whether that's a factually correct conclusion. If it is, the rest of what you're saying would be entirely futile, wouldn't it? No, your honor, because the contract was performed. Whether or not another contractor was given an easier time of it by the Corps than Manning was, Manning did always have the opportunity to sub out their work to someone else, including the person who ended up replacing them, to do the work. But that was their obligation, not to essentially throw up their hands and say we can't do it. It looked to me like they were faced with an obvious roadblock, that their work was not going to be accepted, no matter what might have happened later with respect to some other contract. And your honor, to the extent that the court found that, to the extent that that may be true, it is still their obligation to perform the contract because that obligation- They said they did. Well, the fact that the Corps of Engineers wouldn't accept it is something that should be the matter of a pass through claim after completion of the work. If the court, unfortunately with the federal acquisition regulations, I mean, it is a world that favors the US government heavily. But the role is they have to complete the contract, they have to complete the work to the standards set forth by the owners- So is it a matter of federal law trumping state law, or is it a matter of all this being incorporated somewhere into the contract, and so you really just got contract law operating here? Contract law, your honor. Okay. And I've run into the time I meant to reserve. If there's not a question at this time, I will reserve my last couple minutes. You may. Thank you. Mr. McGreeny, we'll hear from you. Thank you, your honor. May it please the court, it's an honor to be here. Ever been before the Eighth Circuit, hailing from- Welcome to you as well. Oklahoma, been in front of the Tenth Circuit a couple of times, and the Federal Circuit. You're moving up in the world. I want to start- Eight is a smaller letter than ten. Well, it's higher. It's higher. Higher rank. I would like to start with just kind of the basics, the standard of review. There is the argument in Kinder's appeal brief that this is somehow a legal issue, subject to a de novo standard of review. It is not. What Kinder really is trying to do is retry this case, because they don't like the trial court's factual determinations, and they're asking this body to substitute its judgment for that of the trial court. I don't ever like standing in front of appellate court and saying that that's not permitted, but that's not consistent with the standard of review. It must have deference to the trial court's findings of fact, and this really was solely a factual determination, now that Kinder seeks to reverse on appeal. We had a five-day trial. Well, yeah, but there are legal propositions that lie behind this case, as in all cases, and one of those has to do with what a breach is, what a repudiation is, what a material breach is. There were no findings that I could see with respect to this business about the federal requirements. None of that's in the record. Actually, Your Honor, there was fairly extensive argument during the trial about this issue. I meant to say in the opinion. The trial court, and really the crux of the case, comes down to the termination. I mean, all of these other things, while one could argue they were important, and certainly the subject of a lot of testimony and evidence during this five-day bench trial, really it culminates with Kinder's decision to terminate Manning. Right, but here's another thing. All this business about what does it mean, through our satisfaction, that's a legal question. That's nothing to do with the facts, really. And I was about to address that, Judge, because in my notes, in fact, the very first page, the only thing that possibly could be characterized as a legal issue is the meaning of that subcontract provision, which is not an unusual provision in the construction industry. I mean, it's commonplace to see provisions like that, where you have to perform work to the satisfaction of maybe the architect of record, the engineer of record, the other contracting party. But the third party's judgment, when you have this type of contract provision, is not absolute. And that was addressed to the trial court. It's in our submissions on findings of fact and conclusions of law, as it's also- I don't understand that. My point is that it's not addressed in the trial court's opinion. Well, what the trial court said is that the decisions made by Kinder and the Corps of Engineers in connection with rejecting the wall were unreasonable, arbitrary, and capricious. That's what the trial court found. And that falls squarely within the exception, if you would, under Missouri law to a third party's judgment being binding. And so when you have these contract provisions that say work has to be performed to the satisfaction of a third party, in this case, it was one of the contracting parties, Kinder, as well as the Corps of Engineers. What Missouri law says is that third party's judgment cannot be based on fraud, gross mistake, or a misconstruction of the contract. In Missouri law, and we cited these cases, they're at pages 27 and 28 of our brief, Missouri law goes on to say that the decision has to be exercised in good faith, as a reasonable man, and not be arbitrary, which is specifically what the trial court found based on the evidence. Okay, so that's a second set of exceptions, it seems to me. The first had to do with fraud and misconstruction. But this is a second set of, as you would put it, exceptions to strict performance. Yes, Your Honor. And when you consider those judicial exceptions, you're right, you're brought right back into a factual determination. But is that clearly Missouri law? Are there no cases that are slightly less, slightly stricter than that? There were none that I found, Your Honor. There's none that are cited by Kinder Construction. And again, I looked at them again last night. I had them shepherdized by my office last night. They are found at pages 27 and 28. That is consistent, I might add, Your Honor, with what I have found in every jurisdiction in which I have practiced. I just have one more question. Yes, sir. I'll let you proceed. You were arguing, and the court found that there were a couple of other breaches hereby. Yes. Which breach are you seeking to recover for, and what does it matter if these other breaches were committed? Why are they even in the case? I'm having, this is not a rhetorical question. I'm having a real difficulty with this. The posture of the case. The other breaches are significant only in the sense that they provided a background, a history of the contentions between the parties. Yeah. You just want, well, I said I was going to quit asking questions, but I'm not. I've got one more. I looked at you, this was a counterclaim originally. Yes, sir. And it wasn't clear to me whether you were trying to, you were suing on a contract or off the contract, a quasi-contract for the value of services performed, it just says, it just says that they owe you. For materials and supplies or something like that. So, is it? We, we, we, we actually pledged. No, no prayer here for lost profits or anything like that. It's just sort of out of pocket. Is that it? Yes, sir. We, we pled the counterclaim as both breach of an express contract as well as quantum merit and unjust enrichment. We cited those cases as well under Missouri law. If there is an improper termination, you get paid for the work performed. Sure. I just want to make, I'm unclear what your theory was. Where did this number come from, 215-578-24? How do we reconstruct whether that's supported? Mr. Manning testified to it at trial, that that was the value of the labor and materials that he performed in 2012. There was a lot- There was no backup for that, though, right? He just gave a number. He, he, he gave a number. Did he say something about how he had a spreadsheet that showed him, but he couldn't find it right then? Well, not, not exactly. There, there, there was, because of a discovery issue, there was a demonstrative exhibit allowed by the court, which was his final pay application. But it did not come in as part of the evidence, but the court allowed him to refer to it to refresh his recollection on the exact number, but you've got to understand, your honor, there, there's no question, there was no issue at trial, that the man never got paid for any of the work he did the entire year of 2012, that the trial court properly determined was wrongfully rejected by Kinder and the Corps of Engineers. I understand if you, if we agree about the judge's findings on who breached, there would be some damages. I was just asking how we evaluate whether that's the right number or whether that's supported. Yeah. You're saying the thing to which he referred that apparently explained where the number comes from is not in the record. Yes, your honor. There, there were two things that are, are, I think you may be referring to, your honor, that Mr. Willis pounced on Mr. Manning about at trial. The first is that he gave a figure with respect to the value of materials that were left on site when he was fired. And that figure was roughly $80,000. And Mr. Manning testified that he was confident in that number because it was based on delivery tickets and invoices that he personally had reviewed. And he was then asked the question, did you bring them with you to court today? And his answer was, no, I did not bring those with me to court today. What about the other 135, what did he say about that? He, he said that's the value of the labor and services that actually went into the constructed wall. Understand there were two wings to this wall, both of them approximately 40 feet in height. It's a $950,000 subcontract. He constructed one of those wings to a height of 27 and a half feet before he was terminated. And so even just kind of roughly looking at the numbers, that would be about 25% of his total subcontract work, for which he had priced it out at $950,000. Now that's, that's not how he arrived at it. He had a very precise number. Again, because of a discovery issue, that was only allowed as a demonstrative exhibit. But the fact of damage, absolutely certain on the fact of damage. Is the $215,000, did he testify that's what his company spent? Yes, sir. He said that that was the value of the labor and materials that he did. Okay, well, the value, does that mean that's what he was out, the company was out of pocket, that it paid out? I would have to go, okay, is there some profit included? Did he testify that there's some, some profit, you know, or some kind of intangible overhead built into that number? Or is that what, on this partial completion, that's what his company was out of pocket? That's what it put into the project? Your Honor, I don't recall that the issue of whether that figure included profit came out during his trial testimony. I will tell you, based on my recollection of his testimony, I would suspect that he did include overhead and I know the $80,000 figure, his testimony was, that's what he actually paid for materials on the $80,000. And keep in mind, Your Honors, there's a difference there. There's $80,000, which was material that was left on site, stockpiled aggregate panels, things of this nature. And that is part of the $215,000, but the balance of the $215,000  It's just unusual, I don't know what you mean by because of a discovery issue, he couldn't put the exhibit in, but it's just unusual that the person asserting damages can't put on the documents that show where the damages come from. I mean, there was some discovery violation by your client that prevented you from putting on the evidence or something? No, and one of my partners actually presented Mr. Manning for his direct testimony. I happened to be out of the courtroom. Otherwise, quite honestly, I don't think the court would have ruled the way it did. I was a little upset that the court did not allow that document into evidence because I believe it should have. I'm not complaining. The court, Judge Moody, did allow him to refer to it and to refresh his recollection. I just wonder what you meant by a discovery issue. I don't remember what the argument was. It's actually on the record and it took place between Mr. Willis and my partner, Mr. Gatewood. We'll read it. On the question of the breaches, Judge Moody said Kinder breached in these ways, but didn't really cite any law for that. You think those were anticipatory breaches that he was identifying? Absolutely. Yeah, OK. Absolutely. What do you think about the legal question that was raised with your friend here about whether continuing to perform in the face of an anticipatory breach is a waiver of some kind? I think it can constitute a waiver, Your Honor. It can. Absolutely. To be perfectly candid with you, Your Honor, I think, and that's why I say these other breaches are significant. They provide background that's important. But this timing issue is kind of lost on me because the fact of the matter is both parties pressed forward until such time as Kinder fired Manning. And that's my view of the world. We spend an awful lot of time talking about these other breaches, and I think the court rightfully- What about the other breaches, meaning the so-called anticipatory breaches? Yes. But you think the real breach is the termination? Absolutely. I mean, that's what ended the relationship was the termination. And when I say other breaches, Your Honor, kind of on their side, they talk about shop drawings and unpaid bills, which there really wasn't a whole lot of discussion about that. At trial, we talk about the anticipatory repudiation, the fact that we weren't allowed to start work as promised, other interruptions in the construction schedule, all of those things that took place in 2011 and 2012. To me, what is important is the fact that the parties did press forward until such time as we have this zero tolerance policy that was enforced by Kinder and the Corps of Engineers. And there was a lot of evidence, and I'll end with this. Judges, subject to any other questions, but there was, I'll say, a ton of evidence at trial about this zero tolerance policy and the fact that that was not actually a requirement under this contract, and more importantly, perhaps, that it was not constructible. And I would refer the court the trial transcript, page 652, within the first two seconds that I cross-examined Kinder's expert witness. And we had a bunch of experts, Your Honors. I mean, we brought people in from all over the country. They did, we did, to talk about contract requirements, and industry standards, and reasonableness, and arbitrary conduct, and things like this. Within the first 10 seconds of my cross-examination, Mr. Berg, their expert at page 652, says, as it was being enforced, that specification was not constructible. And so the court's determination, in my opinion, was proper and should be affirmed. All right, thank you for your argument, Mr. McGreeny. And Mr. Willis, we'll hear from you in rebuttal. Yes, Your Honor. I want to point out two things, although I'll be very brief. First, page 47 of our primary brief, where we address the disputes clause in FAR, Federal Acquisition Regulation 52-233-1. Yes, this contract was interpreted pursuant to Missouri law. Yes, that is the standard to be applied, unless another provision is incorporated into the contract. And in this case, this FAR provision is a part of the prime contract. It was incorporated. All the terms and conditions of the prime contract were incorporated into the subcontract. This is a condition to which J.A. Manning was subject, and so not performing. I understand that the argument being that under Missouri law, substantial compliance is sufficient. Here, it specifically says, if the government is wrong, if the government is flat wrong and tells you to build a castle on top of the water, you've got to build it and file your claim after, whether or not it could have even been done. That is an obligation that they had. And it is unfortunate, but it is the same obligation that Kinder had, and it is the same predicament that Kinder was placed in, with a subcontractor who, for whatever reason, could not get the job done. Kinder had to get the job done. The termination was not wrongful. And I was there. Let me ask you this, and I may be wrong on this. You can help me. I seem to recall that there was some testimony or evidence that the panels that were eventually provided by the replacement contractor and accepted by Kinder and the Corps of Engineers were really substantially identical, as far as tolerances, to the panels that were constructed by Manning. That was certainly a position that was advanced by J.A. Manning, and I think the proof of trial, fairly, was that, in our position, be that while the shrimp walls, the replacement sub's walls, were significantly better, they were certainly not perfect. And I think that was something that- Was there evidence that the court heard to the effect of what I just said? Yes, Your Honor. That was presented by J.A. Manning, but I think if you'll review- Did they have some expert testimony to that effect, also? I don't believe they had expert testimony to that effect, although perhaps they did with Dr. Collins. Although our expert, Ryan Berg, pointed out through his expert report that that was not the case. And with 10 seconds left, I will say as to the damages issue, I was very confused that Mr. Manning could not And after- I do not say that any misconduct occurred. I do not believe that counsel conducted any misconduct or knew of any. But it is odd that documentation and invoices to support damages could not have been produced by one of the parties after well over 10,000 pages of written discovery. And that he couldn't testify to his own damages without a demonstrative prepared for the purposes of trial in question through counsel. Well, it may be unusual, but I guess the question for us is whether it's sufficient to support the finding. It is. That is- What's wrong with- I mean, if he did testify to the amount and the judge believed him, is that enough to support a damages finding, assuming the breach is upheld? No, Your Honor. I believe that Missouri law, as to the proof of damages in this situation, requires more than a witness who basically can be led through his damages by counsel and can't produce documentation to support them. It requires not absolute certainty, but it does require substantial proof. All right. Well, thank you for your argument. Thank you both for your presentations. The case is submitted, and the court will file an opinion in due course.  And Madam Clerk, please call the next case for action.